IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal Action No. 2:15-CR-087-D |
| VS. | § | |
| | § | |
| JONATHAN KHALID PETRAS et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Four defendants who are charged in a one-count indictment with the offense of interference with flight crew, in violation of 49 U.S.C. § 46504,[1] move to dismiss the indictment, contending that (1) the indictment does not state an offense; (2) if § 46504 is construed to reach the conduct alleged in the indictment, it is unconstitutionally vague; and (3) the government's construction of § 46504 violates the First Amendment on its face and as applied.[2]  The magistrate judge recommends that the motions be denied, and defendants object to his report and recommendation.  Following *de novo* review, the court adopts the magistrate judge's recommendation[3] and denies the motions.

---

[1]The indictment also charges that the defendants are guilty of this offense as aiders and abettors under 18 U.S.C. § 2.

[2]In some defendants' motions, they refer to "§ 49504" rather than "§ 46504."  The court assumes these references are inadvertent typographical errors.

[3]The court does not adopt the report and recommendation to the extent that it is inconsistent with this memorandum opinion and order.

I

Before this criminal action was transferred to the undersigned's docket, defendants Jonathan Khalid Petras ("Petras"), Wisam Imad Shaker, Essa Solaqa, and Khalid Yohana ("Yohana") filed the instant motions to dismiss, which were referred to the magistrate judge for recommendation.  After hearing oral argument, the magistrate judge filed a report and recommendation in which he recommends that the motions be denied.  Defendants have filed objections to the report and recommendation,[4] and the court has conducted *de novo* review.

After making an independent review of the record, and the findings, conclusions, and recommendation of the magistrate judge, the court concludes that the recommendation is correct, and it is therefore adopted.  The court adds the following in support of its decision.

II

Defendants first contend that the indictment does not state an offense under § 46504 because it does not allege a prohibited intimidation.  Yohana also advances the related contention that, even if the court rejects the argument that the indictment does not state an offense under § 46504, the indictment fails as to Yohana specifically because there are no essential facts alleged that Yohana said or did anything.

---

[4]Because review is *de novo* and the court is filing its own memorandum opinion and order, the court will not address defendants' objections to the magistrate judge's report and recommendation unless the context requires.

A

To be sufficient, an indictment must "'allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.'" *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Morrow*, 177 F.3d 272, 296 (5th Cir. 1999)).  "Thus, an indictment is sufficient if it 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend.'" *Id.* (quoting *United States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)).  "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges." *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978) (citations omitted).  "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal quotation marks and citations omitted); *see also United States v. Hagmann*, 950 F.2d 175, 182-83 (5th Cir. 1991). When the court decides a motion to dismiss the indictment for failure to state an offense, it is required to "'take the allegations of the indictment as true and to determine whether an offense has been stated.'" *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

B

Section 46504 provides, in pertinent part:

> [a]n individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both.

49 U.S.C. § 46504.

> The elements of the offense of intimidation in violation of § 46504 are: the defendant (1) was on an aircraft in the special aircraft jurisdiction of the United States; (2) assaulted or intimidated a flight attendant or flight crew member; and (3) in doing so, interfered with the performance of the duties or lessened the ability of the flight attendant or flight crew to perform those duties, or attempted or conspired to do such an act.

*United States v. Naghani*, 361 F.3d 1255, 1262 (9th Cir. 2004) (citing 49 U.S.C. § 46504).[5]

The one-count indictment in this case charges, in pertinent part:

> On or about August 31, 2015, in the Amarillo Division of the Northern District of Texas, and elsewhere, Jonathan Khalid Petras, Wisam Imad Shaker, Essa Solaqa, and Khalid Yohana, defendants, on an aircraft in the special aircraft jurisdiction of the United States, namely Southwest Airlines Flight 1522 departing San Diego, California, with a final destination of Chicago, Illinois, did knowingly interfere and attempt to interfere with the performance of the duties of a flight crew member and flight attendant(s) of the aircraft, and lessen the

---

[5]The magistrate judge's report and recommendation divides the offense into seven elements. Mag. J. Report & Recommendation 3. The court concludes that a formulation based on fewer than seven elements is more precise.

> ability of the members and attendant(s) to perform those duties, by intimidating the flight attendant(s) and flight crew member, specifically, while the flight was in progress the defendants were disruptive, unruly, and disobedient.
>
> In violation of Title 49, United States Code, Section 46504 and Title 18, United States Code, Section 2.

Indictment 1-2 (bold font omitted). The indictment is sufficient because it contains the elements of the offense charged and fairly informs the defendants of the charge against which they must defend. *See, e.g., United States v. Persing*, 318 Fed. Appx. 152, 154 (4th Cir. 2008) (per curiam) (citations omitted) ("Because the indictment filed against [the defendant] alleged the essential elements of the [§ 46504] offense, and tracked the statutory language, we find that the indictment is valid.").

## C

### 1

Defendants maintain, however, that by charging them with an offense based on behavior that was "disruptive, unruly, and disobedient," the indictment does not state an offense. They reason on various grounds that, for conduct to be "intimidating" under the statute, a defendant must use actual force or the threat of actual force against a flight attendant or crew member; that federal criminal law generally imposes liability for "intimidation" if the defendant acted in a manner reasonably calculated to put another in fear, and an ordinary person in the victim's position reasonably could infer a threat of bodily harm from the defendant's acts; that the acts of the defendant must threaten an ordinary, reasonable person; and that, if the court agrees with this construction of the statute, the indictment must

be dismissed because there is no allegation or suggestion that the defendants acted in a way that was reasonably calculated to put a flight attendant in fear, or any suggestion in the indictment or in the criminal complaint that the flight attendants reasonably inferred that the defendants were threatening to cause them bodily harm.   Defendants posit that the government hopes to prove that they were "disruptive, unruly, and disobedient," and perhaps because one or more flight attendants were subjectively frightened, the aircraft was diverted. Defendants maintain that this does not state an offense because "disruptive, unruly, and disobedient" words are not "intimidation" if they are not reasonably calculated to elicit fear in the listener, and "disruptive, unruly, and disobedient" words do not constitute "intimidation" if a reasonable person would not infer an actual threat of bodily harm.

In their reply briefs, defendants contend that the government, having chosen to allege a specific way in which defendants committed the offense—"specifically, while the flight was in progress the defendants were disruptive, unruly, and disobedient"—is limited to proving that specific way at trial, and neither the court nor the prosecutor can modify the specific charge found by the grand jury; therefore, the question is not whether the government can prove some other or additional act that would constitute intimidation, but is instead whether the specific conduct alleged in the indictment constitutes "intimidation" as defined in the statute.   Defendants rely on *United States v. Radley*, 632 F.3d 177 (5th Cir. 2011), contending that the Fifth Circuit affirmed the dismissal of an extensive indictment that, like the indictment here, contained a boilerplate allegation reciting each element of the charged offenses, but the specific conduct alleged in addition to the boilerplate elements

failed to constitute an offense.  Defendants contend that the government incorrectly argues that an indictment need not allege in detail the factual proof that will be relied on to support the charge.  They maintain that the grand jury has specified what it meant by "intimidating," that this alleged conduct does not rise to the level of intimidation, as properly defined, and that the indictment must be dismissed for failure to state an offense.

2

The court disagrees with defendants that the indictment must be dismissed.  One way for a defendant to commit an offense under § 46504—the way that the indictment charges—is to interfere, or attempt to interfere, with the performance of the duties of a flight crew member or flight attendant of an aircraft, or to lessen the ability of the member or attendant to perform those duties, by intimidating the flight crew member or flight attendant. To establish that the actions of the defendant amounted to intimidation, the government must prove beyond a reasonable doubt that the defendant's words and conduct would place an ordinary, reasonable person in fear.  *See United States v. Hicks*, 980 F.2d 963, 972-73 (5th Cir. 1992) (approving definition of intimidation used in jury charge related to predecessor statute, 49 U.S.C. App. § 1472(j)[6]).  Essentially, defendants contend that the indictment must

---

[6]Section 1472(j) provided, in pertinent part:

> Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, assaults, intimidates, or threatens any flight crew member or flight attendant . . . of such aircraft, so as to interfere with the performance by such member or attendant of his duties or lessen the ability of such member or attendant to perform his duties, shall be fined not more than

charge more than it does—that alleging that defendants were merely "disruptive, unruly, and disobedient" does not charge them with using actual force or the threat of force against a flight attendant or crew member, or that alleging that they engaged in actions that were merely "disruptive, unruly, and disobedient" is insufficient to charge them with acting in a way that was reasonably calculated to put a flight attendant or crew member into fear, or to cause the flight attendant or crew member to reasonably infer that the defendants were threatening to cause them bodily harm.   But under the *Hicks*-approved definition of "intimidate," the government must prove that the defendants' actions would place an ordinary, reasonable person in fear.   There is no requirement that the defendants have threatened a flight attendant or crew member.   *See Hicks*, 980 F.2d at 973 ("While intimidation may result from words or conduct that may directly threaten, it is commonly understood that a person may intimidate another without actually making a direct or even veiled threat.").   And while some actions that are "disruptive, unruly, and disobedient" would *not* place an ordinary, reasonable person in fear, there are certainly actions that *would*.   The government is therefore entitled to attempt to prove at trial that the defendants, by disruptive, unruly, or disobedient actions that would place an ordinary, reasonable person in fear, interfered with the performance of the duties of a flight crew member or flight attendant of

---

$10,000 or imprisoned not more than twenty years, or both.

49 U.S.C. App. § 1472(j) (1994).   In revising the statute, Congress omitted the words "or threatens" as being included in "intimidating."   H.R. Rep. No. 103-180, at 390 (1993), *reprinted in* 1994 U.S.C.C.A.N. 818, 1207.

the aircraft or lessened the ability of the member or attendant to perform those duties, or attempted to do such an act.

This is illustrated by the facts of *Hicks*, in which the Fifth Circuit deemed the evidence of intimidation to be sufficient and affirmed convictions under the predecessor statute to § 46504. In *Hicks* two traveling companions (Hicks and Moore) boarded a Continental flight from Jamaica to Houston. Hicks was carrying a "boombox," a portable stereo system consisting of a radio, tape player, and speakers. In addition to engaging in other discourteous conduct toward flight attendants and fellow passengers, Hicks and Moore refused to turn off the boombox, despite directives from flight attendants based on Continental Airlines policy and Federal Aviation Administration regulations. Other passengers complained about the boombox's volume, and the playing of the radio was interfering with the plane's navigational equipment. When Hicks claimed that he was playing an audio tape, not the radio, he was instructed by a flight attendant that he must use headphones. *Hicks*, 980 F.2d at 965-66.

When Hicks and Moore continued their non-compliance with the flight attendants' instructions, one of the flight attendants (Bott) requested that they turn the boombox over to her for the remainder of the flight. Hicks responded using an expletive—the "f—ing radio was going to stay on"—and stating that he would not relinquish the boombox. In a confrontational manner, he passed the boombox to Moore and stated, "if you want the radio, you need to get it from her." Moore also refused to give up the boombox and cursed at Bott. *Id.* at 966. Moore firmly stated that "the radio is going to stay on," and ordered Bott to get her "ass[] back there and do [her] job to get them something to eat and drink." *Id.* (brackets

in original).  Moore also ordered the flight attendants to "quit bothering" them.

At this point another passenger (Canty), who was seated nearby but who was not a traveling companion of Hicks and Moore, intervened and began to curse at Bott and another flight attendant (McWilliams).  Bott began to feel "frightened" by the increasingly angry obstinacy of Hicks, Moore, and Canty, although she maintained her composure.  *Id.* at 967.

When Bott informed the captain of the latest developments in the escalating disturbance, he instructed his second officer to attempt to retrieve the boombox.  In the meantime, McWilliams had another encounter with Hicks and Moore, during which Canty again vocalized his own angry sentiments to her.  *Id.*  When McWilliams directed the attention of Hicks, Moore, and Canty to the part of the Continental Airlines flight magazine that clearly set out the proscription on radio playing and the requirement that tapes be listened to only through headphones, Canty angrily responded that McWilliams should "get out of [his] face."  *Id.* (brackets in original).

Shortly thereafter, the second officer (McKelvain) informed Hicks and Moore that their radio had interfered with the aircraft's navigational equipment, and he asked them to relinquish the boombox.  Hicks told McKelvain "to get f—ed," and that he would rather pay a fine than cooperate.  McKelvain described Hicks as totally "uncooperative," even after being told that he was violating federal law.  As Hicks had done in response to Bott's directive, he passed the boombox to Moore.  Moore refused to hand it over to McKelvain, even after McKelvain stated that he would place it in the overhead compartment located above Hicks and Moore.  Hicks told McKelvain to get his "mother-f—ing ass to the cockpit"

and fly the plane. McKelvain informed the captain that he believed that physical force would be required to retrieve the boombox. *Id.*

Bott made "a last ditch effort" to explain to Hicks and Moore that they were violating federal law. *Id.* Moore stated that she did not care, and that she was going to keep the boombox. Hicks stated that all of the passengers around him wished to hear the radio, that he did not care about a "f—ing" fine, and that he would "buy the f—ing airplane." According to Bott, Hicks' countenance was extremely menacing. And as Bott was trying to talk to Moore and Hicks, Canty kept turning around and saying things to her, such as, "f—you bitch," and telling her to leave Hicks, Moore, and Canty alone. At that point, everyone around them was laughing, and someone began to videotape Bott with a portable camera. *Id.*

Bott and McWilliams testified at trial that, because of the disturbance, for a significant amount of time numerous members of the flight crew were unable to perform their regular duties aboard the aircraft. Bott, McWilliams, and a third flight attendant also testified that they were very much intimidated by Hicks, Moore, and Canty. Bott testified that at one point during her efforts to retrieve the boombox, she felt the need to visually locate fire extinguishers to use in her defense if she was physically assaulted by any or all of the three passengers. Bott also testified that numerous passengers seated around the disturbance had expressed their fear that a riot might break out. *Id.*

The captain realized that further efforts to retrieve the boombox, short of physical force, would be futile, so he diverted the aircraft's course to Cancun, Mexico, where he made

an unscheduled landing.   The captain testified that he was unwilling to order the crew members to attempt to retrieve the boombox by physical force, and he was also unwilling to risk the possibility that further radio playing would again interfere with the aircraft's navigational equipment.  *Id.*  Upon landing, Mexican authorities removed several passengers from the plane, including Hicks, Moore, and Canty.  Canty initially refused to deplane.  *Id.* at 967-68.

The Fifth Circuit explained that it was undisputed that, throughout the flight, neither Hicks, Moore, nor Canty committed assault or battery or verbally threatened any Continental flight crew member with physical harm.  *Id.* at 968.

> Rather, according to the testimony of the various members of the Continental flight crew, intimidation resulted solely from appellants' verbal and non-verbal expressive activity—consisting primarily of appellants' repeated angry and profane remarks, although also including menacing stares, the refusal by Hicks and Moore to relinquish the boombox, and the intentional increase in the boombox's volume by Hicks and Moore.  Bott also cited Hicks and Moore's repeated passing of the boombox between themselves after being asked to relinquish it.

*Id.*

The government argued that the intimidating expression of Hicks, Moore, and Canty, which occupied the attention of numerous members of the flight crew for a significant amount of time and ultimately caused the plane to be diverted to Cancun, was the gravamen of their § 1472(j) violation.  *Id.*  The Fifth Circuit held that the evidence—including the evidence of intimidation—was sufficient to support their convictions.  *Id.* at 974-75.

- 12 -

With respect to the evidence presented by the Government at trial, we observe that numerous members of the Continental flight crew testified that appellants intimidated them.  In the environment in which appellants' statements were made—the closed quarters of an airplane—the extreme and repeated profanity which they used, when combined with the angry tenor of their words, certainly would intimidate a reasonable person. Appellants' words were not merely indicative of aimless frustration; rather, they evinced extreme anger vis-a-vis particular persons, namely Continental flight crew members.

Finally, we observe that it was not merely words, but also appellants' conduct, that intimidated the flight crew members. We note that Hicks and Moore's repeated refusals to relinquish the boombox after being requested to do so, in combination with their angry declarations that the "f—ing radio [is] going to stay on," certainly would have intimidated a reasonable person.  We also observe that the very real threat that appellants would play the radio component of the boombox, which could have caused critical navigational equipment to malfunction, no doubt was intimidating.

*Id.* (bracketed material in original).

Based on the facts of *Hicks* and the Fifth Circuit's reasoning in deeming the evidence

sufficient to convict the defendants under the predecessor statute to § 46504, the court

concludes that conduct that is alleged to be "disruptive, unruly, and disobedient" can be

intimidating.  The conduct of the defendants in *Hicks* could certainly be characterized by

these terms.  They were disruptive and unruly when playing the boombox and using

expletives and denigrating language directed toward flight attendants and the second officer.

And they several times disobeyed the instructions and directives of flight attendants and the

second officer.  Because the indictment in the instant case need not allege in detail the factual

proof that the government intends to rely on to support the charge under § 46504, *Crippen*,

579 F.2d at 342, and because conduct that is "disruptive, unruly, and disobedient" can be intimidating, the court is unable to say based on the indictment alone that count one does not state an offense against the defendants, or, concerning Yohana's additional ground for seeking dismissal, that it does not state an offense against him specifically.

3

Defendants' reliance on *Radley* is also misplaced. In *Radley* the Fifth Circuit affirmed the dismissal of the superseding indictment for violations of the Commodities Exchange Act ("CEA") and wire fraud. *Radley*, 632 F.3d at 179. The CEA counts warranted dismissal because the indictment alleged conduct that fell within the scope of the 7 U.S.C. § 2(g) exemption from regulation for certain off-exchange transactions in non-agricultural commodities. *Id.* at 181-84. The wire fraud counts warranted dismissal because the statute at issue punished wire, radio, and television communications in furtherance of "any scheme or artifice to defraud," and the superseding indictment alleged as the "scheme to defraud" the same conduct and transactions that the court had already held were exempt from regulation under § 2(g). *Id.* at 184-85. Defendants point to *Radley* as an example of the Fifth Circuit's affirming the dismissal of an indictment that contained a boilerplate allegation reciting each element of the charged offenses, but that alleged specific conduct in addition to the boilerplate elements that failed to constitute an offense. They maintain that the *Radley* indictment is like the indictment here. The court disagrees. The Fifth Circuit did not affirm in *Radley* because the indictment merely contained boilerplate allegations together with specific alleged conduct that did not constitute an offense; it affirmed because it was apparent

- 14 -

from the face of the superseding indictment that the grand jury had indicted the defendants based on conduct that fell within a statutory exemption and could not be a crime.

In the present case, defendants maintain that the indictment fails to allege an offense; they do not argue that the conduct alleged in the indictment—"disruptive, unruly, and disobedient" behavior—falls within a statutory exemption. Accordingly, *Radley* does not support dismissing the indictment.

## III

Defendants next contend that if § 46504 is construed to reach the conduct alleged in the indictment, it is unconstitutionally vague because it does not sufficiently define the term "intimidation."

## A

In their objections to the magistrate judge's report and recommendation, and in a supplemental letter that Petras has submitted, defendants maintain that, before the court considers their constitutional challenges, it should construe § 46504 to determine what "intimidating" means. Because, as the court explains next, it can reject defendants' constitutional challenges merely by following *Hicks*, it need not define the term "intimidating." But because it may streamline the process of ruling on motions for judgment of acquittal and objections to the jury charge, the court notes that there are several examples of substantially similar definitions that may inform how the court defines the term "intimidating."

The first is found in *Hicks*, in which the Fifth Circuit approved the following

instruction in the context of the predecessor statute to § 46504: "In considering whether the actions of the Defendant(s) amounted to intimidation, you are instructed that it is sufficient if the words and conduct of the Defendant(s) would place an ordinary, reasonable person in fear." *Hicks*, 980 F.2d at 972-73.  The Fifth Circuit explained that its "research indicate[d] that the most commonly understood 'dictionary' definition of 'intimidate' [was] in fact the one given by the [district] court—namely, to place a person in fear." *Id.* at 973.  And it stated that "[w]hile intimidation may result from words or conduct that may directly threaten, it is commonly understood that a person may intimidate another without actually making a direct or even veiled threat." *Id.*

Similarly, in *United States v. Gilady*, 62 Fed. Appx. 481 (4th Cir. 2003) (per curiam), the Fourth Circuit held: "In order to prove intimidation within the meaning of § 46504, 'it is sufficient that the conduct and words of the accused would place an ordinary, reasonable person in fear.'" *Id.* at 484 (quoting *United States v. Meeker*, 527 F.2d 12, 15 (9th Cir. 1975)).  In *United States v. Murphy*, 556 F.Supp.2d 1232 (D. Colo. 2008), the district court cited *Hicks* in support of the conclusion that Congress "intended that any act that 'would place an ordinary, reasonable person in fear' is sufficient" to constitute "intimidation" under § 46504.  *Id.* at 1236 (quoting *Hicks*, 980 F.2d at 972-73).  And the *Pattern Jury Instructions (Criminal Cases) for the Eleventh Circuit* No. 118 (2010) include the following instruction concerning an offense charged under § 46504:

> To "intimidate" someone is to intentionally say or do something that would cause a person of ordinary sensibilities to fear bodily harm.  It's also to say or do something to make another person fearful or make that person refrain from doing something that the person would otherwise do – or do something that the person would otherwise not do.

*Id.* at 627-28.

B

The court rejects defendants' contention that § 46504 is unconstitutionally vague because it does not sufficiently define the term "intimidation" or because it permits a defendant to be convicted for "unruly" conduct.  In *Hicks* the panel held that § 1472(j)—the predecessor statute of § 46504—was not unconstitutionally vague.

> "In a facial challenge to the . . . vagueness of a law [], a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494-95 (1982).  If the statute does not proscribe a "substantial" amount of constitutionally protected conduct, a party may raise a void-for-vagueness challenge only if "the enactment is impermissibly vague in *all* of its applications.  *Id.* at 495 (emphasis added).

*Hicks*, 980 F.2d at 972 (emphasis, ellipsis, and brackets in original).  Because "the statute d[id] not reach a 'substantial' amount of constitutionally protected conduct," and "obviously [was] not impermissibly vague in *all* its applications," it was not unconstitutionally vague.  *Id.* (emphasis in original).  *See also Persing*, 318 Fed. Appx. at 154 (citing *Hicks*, 980 F.2d at 972) (upholding § 46504 in response to void-for-vagueness challenge); *United States v. Tabacca*, 924 F.2d 906, 912-13 (9th Cir. 1991) (cited by *Hicks*, 980 F.2d at 972) (upholding

- 17 -

§ 1472(j) in response to void-for-vagueness challenge).

## C

Defendants contend that this portion of *Hicks* has been overruled by *Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551 (2015). They maintain that the requirement that, to be unconstitutionally vague, a statute must reach a substantial amount of constitutionally protected conduct, or that the crime must be impermissibly vague in *all* its applications, is no longer the law and is an argument that was advanced by the dissent in *Johnson*. The court disagrees.

In *Johnson* the Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 ("ACCA") is unconstitutionally vague. *Id.* at 2557-58.[7] But *Johnson* purported to overrule only *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011)—two cases addressing the ACCA's residual clause. *See id.* at 2563 ("Our contrary holdings in *James* and *Sykes* are overruled."). The *Johnson* Court did not purport to overrule any of its other decisions addressing the vagueness doctrine, including decisions that establish how unconstitutional vagueness is to be determined. This court will

---

[7]In *Johnson* the ACCA's residual clause was deemed to be unconstitutionally vague because it required that courts first imagine an "ordinary case" and then adjudicate that "ordinary case" under an "imprecise standard." *Johnson*, 135 S.Ct. at 2557-58. The Fifth Circuit recently explained that "by 'ordinary case' the Court refers to a hypothetical case based upon hypothetical facts, standard to the crime, instead of the defendant's actual criminal conduct" (i.e., "the *archetypical* conduct associated with the crime."). *United States v. Gonzalez-Longoria*, ___ F.3d ___, 2016 WL 537612, *3 (5th Cir. Feb. 10, 2016). Because § 46504 does not suffer from the same shortcomings when a jury decides whether the defendant engaged in conduct that was "intimidating," *Johnson* is inapplicable to the present case.

not therefore assume that *Johnson* overruled *Village of Hoffman Estates*, 455 U.S. 489, on which *Hicks* relied on to determine whether § 1472(j) was unconstitutionally vague.

Moreover, the Supreme Court has unequivocally stated that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989); *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 3 (2000) (stating that the "Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*"); *Williams v. Whitley*, 994 F.2d 226, 235 (5th Cir. 1993) (stating that "absent clear indication from the Supreme Court itself, lower courts should not lightly assume that a prior decision has been overruled *sub silentio* merely because its reasoning and results appear inconsistent with later cases").

Finally, since *Johnson* was decided, courts have continued to follow *Village of Hoffman Estates*' test for vagueness. *See, e.g., Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 142 (2d Cir. 2015) (quoting *Vill. of Hoffman Estates*, 455 U.S. at 497) ("Under traditional standards governing facial vagueness challenges, a law is facially unconstitutional only if it is 'impermissibly vague in all of its applications.'"); *Powell v. Noble*, 798 F.3d 690, 704 (8th Cir. 2015) (quoting *Vill. of Hoffman Estates*, 455 U.S. at 495) ("Indeed, when a statute, regulation, or ordinance does not implicate constitutionally protected conduct such as speech, a court 'should uphold the challenge only if the enactment is impermissibly vague in all of its applications.'"); *see also Nev. Rest. Servs., Inc. v. Clark Cty.*, ___ Fed. Appx.

- 19 -

___, 2016 WL 146062, at *2 (9th Cir. Jan. 5, 2016) (quoting *Vill. of Hoffman Estates*, 455 U.S. at 495) ("[Plaintiff's] facial vagueness challenge lacks merit, as the language of the Ordinance is not 'impermissibly vague in all of its applications.'").

Accordingly, this court is bound by *Village of Hoffman Estates* and *Hicks*. Because the Fifth Circuit held in *Hicks* that the predecessor statute to § 46504 was not unconstitutionally vague, defendants' "void-for-vagueness challenge must fail." *Hicks*, 980 F.2d at 972.[8]

IV

Finally, defendants assert that § 46504—as construed by the government and in the indictment—violates the First Amendment on its face and as applied.

A

In *Hicks* the Fifth Circuit rejected the argument that the term "intimidate" in § 1472(j) was overbroad on its face because it effectively criminalized a form of speech (simple profanity or vulgarity) that may well intimidate but should nevertheless be afforded protection under the First Amendment. *Hicks*, 980 F.2d at 969. In addition to rejecting appellants' reliance on an overbreadth challenge, *id.* at 969-70, the panel explained that "'the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Id.* at 970 (quoting *Members*

_____

[8]The court also rejects defendants' assertion that they can be convicted based on a flight attendant's subjective emotional reaction to their behavior. The court anticipates including an objective requirement in the definition of the term "intimidating," just as the district court did in *Hicks*.

- 20 -

*of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).  "Rather, a party challenging a statute on overbreadth grounds must demonstrate that there is a 'substantial' potential that the overbroad statute will chill third parties' speech."  *Id.* (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).  Thus the court concluded that "§ 1472(j) d[id] not pose a 'substantial' threat of overbreadth."  *Id.*

Defendants do not appear to argue that the overbreadth test set out in *Members of the City Council*, and relied on in *Hicks*, has been overruled.  This court is therefore bound by *Members of the City Council* and *Hicks*.  Accordingly, defendants' facial challenge to § 46504 fails.[9]

B

Defendants also maintain that § 46504 is overbroad as applied because they "are being prosecuted solely for things that they *said*."  *E.g.*, Petras Mot. to Dismiss 2 (emphasis in original).  The court disagrees.

First, the indictment does not allege that defendants committed an offense merely by

---

[9]The court disagrees with defendants' contention that § 46504 is a content-based law that cannot survive scrutiny under *Reed v. Town of Gilbert*, ___ U.S. ___, 135 S.Ct. 2218 (2015).  Section 46504 does not target speech based upon its communicative content.  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 2227 (citing cases).  To the extent that § 46504 criminalizes speech, it criminalizes a person's speech on an aircraft that intimidates a flight crew member or flight attendant of the aircraft, thereby interfering with the performance of the duties of the member or attendant or lessening the ability of the member or attendant to perform those duties, or attempting or conspiring to do such an act.  Section 46504 does not apply to particular speech because of the topic discussed or the idea or message expressed.

what they said.  The indictment does not even refer to defendants' speech.  It charges that defendants committed the offense by engaging in conduct that was "disruptive, unruly, and disobedient."  A person can be "disruptive, unruly, and disobedient" without uttering a spoken word, based entirely on non-verbal conduct.[10]

Second, even if the evidence introduced at trial does involve defendants' speech and thus provides some basis to make an as-applied challenge, this is an argument to be made at trial, not via a pretrial motion to dismiss the indictment.

Third, even if defendants make an as-applied challenge at trial or by post-verdict motion, *Hicks* teaches that such an argument may fail.  *See Hicks*, 980 F.2d at 971-72 (explaining why criminalizing defendants' angry profanity and vulgarities did not violate First Amendment where statute regulated content of speech only in an incidental fashion and proscribed intimidating speech in a quite limited context).

\*   \*   \*

Accordingly, for the reasons explained, the court adopts the recommendation of the magistrate judge and denies defendants' motions to dismiss the indictment.

**SO ORDERED**.

March 17, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[10]The court need not address at this time whether defendants' alleged conduct qualifies as "true threats" under *Virginia v. Black*, 538 U.S. 343 (2003).